### THELMA D. JOHNSON v. JIM CRAIG

28 So. (2nd) 696          June Term, 1946
September 20, 1946          Division A
Rehearing En Banc January 10, 1947
Rehearing denied January 31, 1947

*E. M. Baynes* and *R. G. Hamilton,* for appellant.

*M. D. Carmichael* and *Edwin T. Osteen,* for appellee.

BUFORD, J.:

Appeal brings for review decree of partition entered in a suit by one claiming an interest in certain real estate acquired in such manner as to create in the plaintiff and defendant a co-tenancy.

The testimony was taken before, and heard by, the Chancellor and was, in some degree, conflicting and, therefore, in reviewing the decree we must observe the rule stated in Nelson v. State, ex rel. Quigg 156 Fla. 189, 23 So. (2nd) 136.

In the final decree the Chancellor said:

"Defendant takes the position that the transaction by which she acquired title to the real estate in question was solely between the former owner and defendant; that plaintiff contributed nothing to the purchase price thereof; and that there was no intention that plaintiff should have an interest in the lands. The escrow agreement, together with the circumstances of the purchase, demonstrate to the satisfaction of the Court that the real estate was purchased upon the joint credit of both parties and that a resulting trust in plaintiff's favor should be declared to an undivided one-half interest therein. Restatement of Law of Trusts, Vol. 2, Sec. 456; Pomeroy's Eq. Juris. Vol. 4, (5th Ed.) page 77. Title was taken in defendant's name for convenience. Plaintiff had a wife living in Scotland, from whom he had been estranged for many years. It was planned to secure a loan from a lending agency by mortgage on the premises and to get plaintiff's wife to sign the mortgage would have been a difficult, if not an impossible, step.

"The statements subsequently given to the lending agency that plaintiff had no interest in the property, were made for the sole purpose of inducing the agency to accept the mortgage without the wife's signature. These statements do not operate as an estoppel in defendant's favor, because it has

not been shown that defendant changed her position or acted in anywise to her prejudice in reliance thereon."

We find that the conclusions reached by the Chancellor are amply supported by the record and that to the facts he applied the correct principles of law and equity.

So, the decree is affirmed.

So ordered.

CHAPMAN, C. J., TERRELL, and ADAMS, JJ., concur.

ON REHEARING GRANTED

PER CURIAM:

Jim Craig, plaintiff in the court below, filed his bill for partition of certain property in Palm Beach County and sought to recover from Thelma D. Johnson, the defendant, the rents and profits thereof. The defendant, by her counterclaim sought to recover from plaintiff rent for his use and occupancy of the land. After trial the court entered its decree of partition on January 16, 1946, decreeing a resulting trust in favor of plantiff and denying an accounting between the parties. Defendant appeals from this decree.

The facts are:

Jim Craig and Thelma Johnson were friends of mature years. Jim has a wife in Scotland of whom Thelma knew nothing. Jim came to West Palm Beach with one of a wifely "status" which affair was terminated before he and Thelma became involved in the subject matter of this suit.

In the summer of 1936 Jim's friend Wells aroused Jim's interest in buying his lot at a price of $400.00 and building a house. Thelma was consulted and she agreed.

Thelma was the grantee in the deed. Thelma and Jim signed a note in February 1937 to Wells to secure advances by Wells of $2,041.75 for the construction of a house on the lot. This note was taken up and cancelled when an F.H.A. mortgage of $4,000.00 was made in the summer of 1937.

The friends of Jim who were carpenters, masons, painters, plumbers, etc., donated their services in the construction of the house. This donation, together with the borrowed money, the work of Jim and some funds of Thelma from the sale of a Georgia dwelling, bought the lot and built the house in dispute.

In the mortgage signed by Jim he disclaimed any interest in the property. Of record it had to be Thelma's transaction because of Jim's wife in Scotland from whom he had separated many years before. But as for Thelma it appears that she thought she was buying a lot for herself. This arrangement being subjected to the effect on the conduct of the parties of the understanding that Thelma and Jim would marry when Jim got his divorce.

Thelma advanced $600.00 toward the payment to Wells for his lot at a price of $400.00 and his construction loan of $2,041.75. She also made other payments.

From the day that Thelma was brought into this deal it was the understanding that the property was to be in her name. Credit on the property was obtained twice, to-wit: the F.H.A. mortgage to the Bank and the loan from Wells and in both instances Jim signed that he had no interest in it.

Jim's major contribution was the labor of his beneficent friends. Thelma's contribution has been her efforts and her funds. She at all times proceeded knowing she held the title. Thelma knew of Jim's disclaimer and it appears that she at all times dealt with it as her own property. Jim claims no particular contribution other than his friends' labor; the value of which has not been determined. The affairs of the house seem to have been handled by Thelma.

The mutual dealings of the parties was doubtless affected by the idea of marriage which was to take place when Jim got his divorce. He is still without a divorce. Their ways have now parted and now after seven years Jim claims a resulting trust of a half interest in the house.

The labor contributed for the construction of the house was labor donated to Jim Craig and not to Thelma which as between Thelma and Jim was Jim's contribution to the enterprise.

"A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein, unless the inference is rebutted ... "

Restatement, Trusts Sec. 404.

"Where a transfer of the property is made to one person and a part of the purchase price is paid by another, a resulting trust arises in favor of the person by whom such payment is made in such proportion as the part paid by him bears to the total purchase price, unless he manifests an intention that no resulting trust should arise or that a resulting trust to that extent should not arise."

Restatement, Trusts Sec. 454.

If Jim's contribution of labor was a gift to Thelma no resulting trust arises.

The question is whether or not Jim has a claim against the property and if so does this fact give rise to a resulting trust —if so to what part?

Quere: If not a resulting trust, does Jim have an equitable lien for the value of the labor contributed by his friends?

We are inclined to think no trust resulted. That Jim may have made a gift, but if not a gift then he has an equitable lien to the extent of the fair and reasonable value of the labor when contributed.

"An 'equitable lien' may arise from a written contract which shows an intention to charge some particular property with a debt or obligation, or may be declared by a court of equity out of general consideration of right and justice as applied to relations of the parties and circumstances of their dealings in the particular case."—Gables Racing Assoc., Inc. v. Persky, 148 Fla. 627, 6 So. (2nd) 257.

As stated by the chancellor in reference to accounts between the parties concerning cotenancy it appears that the circumstances would not justify taking into consideration the rents and profits or use or occupancy of the premises—nor the living expenses.

Our conclusion is that the decree ought to be reversed with leave to the plaintiff to file an amended bill herein for the purpose of impressing the property of the defendant with an equitable lien as hereinabove suggested, the chancellor using and considering the relevant evidence already adduced herein and any additional evidence.

So the decree is reversed.

So ordered.

CHAPMAN, C. J., TERRELL, THOMAS, ADAMS and BARNS, JJ., concur.

BUFORD, J., dissents.